## RENAUD SALES CO., Inc., v. DAVIS.
### No. 4326.

District Court, D. Massachusetts.
March 18, 1938.

Arthur D. Thomson, Boston, Mass., and John Glaccum (of Munn, Anderson & Liddy), of New York City, for plaintiff.

John W. Walsh and Harry Ehrlich, both of Boston, Mass., for defendant.

SWEENEY, District Judge.

This is a suit in equity based upon an alleged infringement of a trade-mark, and on unfair competition, wherein the plaintiff seeks to enjoin the defendant from further infringement and unfair competition, to enjoin him from the use of the name "Renaud," and representations that the defendant is in any way connected with the Societe Anonyme Renaud Paris 1817. The defendant denies the infringement and unfair competition, and asserts that the plaintiff is not entitled to relief in a court of equity, because the use by the plaintiff of the trade-mark relied on constitutes a fraud on the public. A temporary injunction has been granted pendente lite, and the plaintiff has filed a bond conditioned on the payment to the defendant of $2,000 as liquidated damages, and such further sum up to $4,000 as shall be proved to be the defendant's actual damage, if the injunction referred to ought not to have issued.

## Findings of Fact.

Renaud-Paris-1817, S. A. are parfumers of international reputation. The defendant caused to be organized in the United States a corporation under the title of Renaud et Cie of America, and it was constituted by Renaud-Paris-1817, S. A., as the sole and exclusive agents to handle and distribute the wares of Renaud-Paris-1817, S. A., in the United States. The Massachusetts corporation caused to be registered in the United States Patent Office the name "Renaud" on October 13, 1925, and was the owner of such trade-mark. On July 15, 1934, Renaud et Cie made an assignment for the benefit of their creditors to Raymond Lillie and Henry E. Kingman. The assignees sold all of the assets, including the trade-mark, on August 31, 1934, to one Morin. Thereafter, Morin conveyed these assets, including the trade-mark "Renaud," to the plaintiff. Notwithstanding these transfers, in April of 1936, the defendant adopted the name Renaud et Cie, and filed a certificate of notice that he was personally doing business under that name and style. Prior to the assignment for the benefit of creditors, Renaud et Cie had acted as the American representative for Renaud of Paris, and had put their product on the American market where it received a well defined reputation. The bulk of the business at that time centered around one or two perfumes which had achieved great popularity. One of these was a fragrance known as "sweet pea." Customarily it purchased the perfume from Paris in bulk, and bottled it at its American plant, making little, if any, changes in the article received from France.

After the plaintiff's predecessor in title Morin became the owner of the assets of Renaud et Cie, which included the trade-mark "Renaud," he entered into a contract with Renaud-Paris-1817, S. A., whereby Renaud of Paris conveyed to him all of its right, title, and interest in and to its business in the United States, and the trade-mark "Renaud." On April 27, 1936, Morin assigned this contract to the plaintiff.

Prior to its assignment for the benefit of creditors, the perfume put out by Renaud et Cie was a high-grade perfume retailing at about $10 an ounce in some instances. After the plaintiff secured the assets of Renaud et Cie, it commenced to put up a perfume with all of the markings of the old Renaud perfume, but at a greatly reduced price. It sold quarter ounce bottles of its product for as little as 39 cents. The same trade-mark markings were used on the old Renaud perfume, and in no way was the attention of the public called to the fact that there had been any change either in the place of origin or the ownership of the concern manufacturing the perfume. The public therefore had a right to believe that the new and cheaper perfume was the same perfume that had previously been purchased at higher prices. The plaintiff's ability to sell the perfume at a greatly reduced price was brought about by a remixing of the essence obtained from France with suitable oils and alcohol whereby a much greater volume was obtained with the same amount of floral essence. A comparison between the two perfumes would disclose, even to the writer of this opinion who has no pretention to a knowledge of perfume bouquets, a vast difference in the two products. No intimation of any difference in the product was made by the plaintiff to the public. Any member of the purchasing public buying the plaintiff's perfume, from the markings contained on the bottle and on the package, would have no reason to suspect that the perfume that she was buying was of a lesser quality than the old Renaud perfume. Such conduct on the part of the plaintiff constituted a fraud on the public.

## Conclusions of Law

In Beckwith's Estate, Inc., v. Commissioner of Patents, 252 U.S. 538, 543, 40 S.Ct. 414, 416, 64 L.Ed. 705, the court stated: " * * * the function of a trademark is to point distinctively, either by its own meaning or by association, to the origin or ownership of the wares to which it is applied, and words merely descriptive of qualities, ingredients, or characteristics, when used alone, do not do this." The use of the identical label, with nothing else appearing on the bottle, on which was stamped the words, "Renaud-Paris-1817," would lead the public to believe that this was a perfume manufactured by the well known Renaud firm of Paris, and that the product and quality were the same which the public had been receiving under the old label. This was a misrepresentation on the part of the plaintiff constituting a fraud upon the public.

The fact that Renaud-Paris-1817, S. A., by its agreement with the plaintiff's predecessor in title Morin in April of 1936, apparently authorized such conduct as has guided the plaintiff in purveying the cheap-

er brand of perfume does not strengthen the plaintiff's position. In Federal Trade Commission v. Winsted Co., 258 U.S. 483, 494, 42 S.Ct. 384, 386, 66 L.Ed. 729, the court said: "That a person is a wrong-doer who so furnishes another with the means of consummating a fraud has long been a part of the law of unfair competition." As a misrepresentation of the quality and the place of origin, as well as the manufacturer, of the perfume has been made to the public, it constitutes such a fraud on the public as will bar the plaintiff's right to relief in a court of equity. In Manhattan Medicine Company v. Wood, 108 U.S. 218, at page 222, 2 S.Ct. 436, 438, 27 L.Ed. 706, the court stated that: "A court of equity will extend no aid to sustain a claim to a trade-mark of an article which is put forth with a misrepresentation to the public as to the manufacturer of the article, and as to the place where it is manufactured both of which particulars were originally circumstances to guide the purchaser of the medicine." See, also, Peters Co. v. MacDonald, D. C., 5 F.Supp. 692, 694; Recamier Mfg. Co. v. Harriet Hubbard Ayer, Inc., D. C., 59 F.2d 802, 808; Gynex Corporation v. Dilex Institute, 2d Cir., 85 F.2d 103, 106.

 The penalty in the bond filed in this case provides for the payment of between $2,000 and $4,000 to the defendant "if it should turn out after the hearing on the merits that the temporary injunction about to issue ought not to have issued." The defendant Davis is using the name "Renaud" without the slightest bit of authority to do so. Any rights that Renaud et Cie, the old Massachusetts corporation, had in the use of the name "Renaud" were lost on the sale by the assignees of that corporation of all its assets, including the trade-mark, to Morin. Such use as the defendant now makes of the name "Renaud et Cie" as the name and style under which he is doing business is a deliberate attempt to convince the public that he, Davis, still represents the old Renaud people of France. The use of the name "Renaud" in connection with his perfumes, also, is misrepresentation and fraud. Clearly, the temporary injunction which was issued pendente lite should have issued, and would be made permanent by this court if the plaintiff had the standing to seek the enforcement of such a right. I therefore find and rule that the temporary injunction issued in this case should have issued, and that the penalty

provided in that bond is not due. The bond is therefore ordered dissolved, as is the temporary injunction, against the defendant. Any and all agreements entered into between the parties pendente lite are also terminated. Solely on the basis of the plaintiff's unclean hands, I find and rule that the plaintiff is barred from obtaining in a court of equity the relief which it seeks. The court will leave the parties where it found them.

A decree dismissing the bill may be submitted.